IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LINDA SNOW, MARION WOODSON, )
and JOEL SNOW, Personal )
Representatives of the Estate )
of Mary B. Snow, )
)
      Plaintiffs, )
)
      v. )    CIVIL NO. 1:04CV00681
)
JOSE M. ONEILL, MEYER'S )
BAKERIES, INC., and MCC )
TRANSPORTATION, INC., )
)
      Defendants. )

MEMORANDUM OPINION

BULLOCK, District Judge

This diversity case arises out of a traffic accident which occurred in Caswell County, North Carolina, and caused the death of Plaintiffs' decedent, Mary B. Snow. Plaintiffs bring claims for negligence, gross negligence, and willful and wanton negligence against all Defendants and claims for negligent hiring, retention, supervision, and training against the corporate Defendants. The corporate Defendants admit negligence by their driver, Defendant Oneill, but deny proximate cause, assert the affirmative defense of Plaintiffs' decedent's contributory negligence, deny gross negligence, deny willful and

wanton negligence, and deny the negligent hiring, retention, supervision, and training allegations against them.

This case is before the court on motions by both the Plaintiffs and Defendants: (1) Plaintiffs' motion for partial summary judgment on the issue of Defendant Oneill's gross or willful or wanton negligence and (2) Defendants' motion for summary judgment on all claims.  For the reasons set forth below, these motions will be denied except the corporate Defendants' motion for summary judgment on Plaintiffs' negligent hiring claim, which will be granted.

FACTS

Defendant Jose M. Oneill, a resident of Florida, was hired as a truck driver by Defendants Meyer's Bakeries, Inc., and MCC Transportation, Inc. (the corporate Defendants) in February 2001.[1]  The corporate Defendants provided Oneill the tractor trailer truck (including all required safety implements) that he was driving north on U.S. Highway 29 in Caswell County, North Carolina, on January 26, 2003.  At about 8:30 that morning Defendant Oneill felt tired and pulled the truck onto the

---

[1] The corporate Defendants are organized and existing under the laws of the State of Arkansas and have their principal places of business in Arkansas.  Decedent's estate is being probated in Virginia.

2

shoulder of the four-lane highway and parked the cab and a small portion of the trailer under an overpass, completely out of the lanes of travel.  Oneill kept the truck's engine running and its running lights on, and then climbed into the truck's sleeping berth and went to sleep.  The trailer was marked with red marking tape having the lettering "Xtra Lease" on the back.  Oneill did not turn on the hazard lights or employ the three reflective triangles that were required to be placed along the shoulder of the highway at certain distances ahead of and behind the parked truck.  According to Oneill he planned to sleep for about fifteen minutes but did not awaken for 3-1/2 hours, when he felt the impact from Plaintiffs' decedent's vehicle hitting the rear of the truck.

At the same time and place, Mary B. Snow, a 73-year-old resident of Virginia, was driving her motor vehicle north on U.S. Highway 29.  It appears that Snow drove her vehicle at full highway speed along the shoulder of Highway 29 directly into the rear of Oneill's parked truck.  Snow's car was embedded under the tractor trailer by more than ten feet, and she died at the scene.

Oneill knew that there was a rest area approximately 1-1/2 to 2 miles further north on Highway 29 where he could have parked to rest.  At the time he pulled to the shoulder he was not experiencing any mechanical trouble with the truck.  The highway's lanes were marked clearly by solid exterior lateral

3

foglines on each side and a broken dividing line in the center. The shoulder was paved and ended in grass. The accident occurred in clear, cold weather at about noon. The parties agree that it had snowed earlier in the week, but disagree about whether there was any residual snow in the roadway or on the shoulder at the time of the accident. Nevertheless, the core facts about how the accident happened are not in serious dispute. Defendants concede that Oneill was negligent in failing to set out the required reflective triangles prior to falling asleep as required by the Federal Motor Carrier Safety Regulations, codified at 49 C.F.R. § 392.22. Although Plaintiffs have not admitted contributory negligence on the part of Snow, it will be assumed for purposes of resolving the present motions.

## DISCUSSION

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits on record show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of persuasion on all relevant issues. Celotex, 477 U.S. at 323. The court must view the facts in the light most

4

favorable to the non-moving party, drawing all justifiable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Love-Lane v. Martin, 355 F.3d 766, 775 (4th Cir. 2004). "The plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." Anderson, 477 U.S. at 257.

I. Negligence

A federal court sitting in diversity must apply the substantive law of the forum state as would the highest court of that state. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Castillo v. Emergency Med. Assocs. P.A., 372 F.3d 643, 646 (4th Cir. 2004); Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir. 1992). Under North Carolina law, if Oneill was merely negligent, his negligence would be overcome by any contributory negligence on the part of Plaintiffs' decedent, which would bar any recovery by Plaintiffs. Tyson v. Ford, 288 N.C. 778, 782, 47 S.E.2d 251, 254 (1948). If, however, Defendant Oneill's acts and omissions constitute at least gross negligence, it would overcome any contributory negligence by Snow, and Plaintiffs would avoid summary judgment on their negligence claim. If Oneill's conduct and omissions rose to the level of

5

willful or wanton negligence, Plaintiffs could be entitled to an award of punitive damages under North Carolina General Statute § 1D-15. Such willful or wanton conduct would have to be proven by clear and convincing evidence, however.[2] Punitive damages are available against a corporate defendant only if the "officers, directors, or managers of the corporation participated in or condoned" the willful or wanton conduct. N.C. Gen. Stat. § 1D-15(c).

Ordinary negligence is defined under North Carolina law as a failure to use "that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself and others from injury." Pinyan v. Settle, 263 N.C. 578, 582, 139 S.E.2d 863, 866 (1965); Barnes v. Caulbourne, 240 N.C. 721, 725, 83 S.E.2d 898, 901 (1954). Gross negligence is acting in reckless disregard of the safety of others. Jones v. City of Durham, 360 N.C. 81, 85, 622 S.E.2d 596, 600 (2005). An act is "willful" under North Carolina law if it is "done purposefully and deliberately in violation of law or when it is done knowingly and of a set purpose, or when the mere will has free play, without yielding to reason." Yancey v. Lea,

---

[2]The parties in their briefs do not make a distinction between gross negligence and willful or wanton negligence. This court's analysis, however, treats them as two distinct concepts, occupying different points on the negligence scale. See N.C. Gen. Stat. § 1D-5(7); Jones v. City of Durham, 360 N.C. 81, 86, 622 S.E.2d 596, 600 (2005).

6

354 N.C. 48, 52, 550 S.E.2d 155, 157 (2001). "An act is wanton when it is done of a wicked purpose, or when needlessly, manifesting a reckless indifference to the rights of others." Id. North Carolina's punitive damages statute defines "willful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the Defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7).

Although North Carolina courts have used the terms "gross negligence" and "willful and wanton conduct" interchangeably in the past, see, e.g., Yancey, 354 N.C. at 52, 550 S.E.2d at 157, (2001), the punitive damages statute specifies that "'[w]illful or wanton conduct'" means more than gross negligence." N.C. Gen. Stat. § 1D-5(7). A recent North Carolina Supreme Court case also makes it clear that "willful and wanton conduct" is something more than "gross negligence." Jones, 360 N.C. at 85, 622 S.E.2d at 600.

The core issues in this case turn on whether under North Carolina law Defendant Oneill was (a) merely negligent or (b) guilty of a more egregious form of misconduct such as gross negligence or willful or wanton conduct. Assuming arguendo that Snow was contributorily negligent, Plaintiffs must overcome the contributory negligence bar by providing sufficient evidence to create a jury question on the existence of at least Defendant

7

Oneill's gross negligence. If Plaintiffs fail to meet this burden, Defendants would be entitled to summary judgment in their favor. Plaintiffs' motion for partial summary judgment on their claim for punitive damages can be granted only if, when viewing the facts in the light most favorable to Defendants, Oneill's actions would constitute willful or wanton conduct by clear and convincing evidence as a matter of law.

A careful review of the current record reveals that neither Plaintiffs nor Defendants are entitled to summary judgment on these issues. On the one hand, Defendant Oneill did take some precautions by stopping when fatigued and parking completely out of the lanes of travel and on a straight, flat portion of the roadway under an overpass. He did not intend to cause an accident and believed it was safe, as indicated by his decision to stay inside the truck. He was not intoxicated, driving at excessive speeds, or racing, which typically constitute gross negligence under North Carolina law. See, e.g., Yancey, 354 N.C. at 53-54; 550 S.E.2d at 158. Viewing the evidence in the light most favorable to Defendants it would appear that the evidence is sufficient to support a finding that Oneill was guilty only of ordinary negligence, that he was not acting recklessly, and that he was not acting willfully or wantonly. Therefore, Plaintiffs' motion for partial summary judgment on the issue of Defendant

Oneill's gross negligence and willful or wanton conduct will be denied.

On the other hand, Defendant Oneill should have employed the reflective triangles which the corporate Defendants provided and which he knew were required. Defendants have admitted Oneill's failure to do so was a violation of Federal Motor Carrier Safety Regulations, codified at 49 C.F.R. § 392.22. Oneill also knew that cars have hit trucks parked outside the lanes of travel along roads in the past. Furthermore, a reasonable jury might conclude that Oneill had a duty to drive to the nearby rest area before parking. Finally, Plaintiff's evidence is that the roadway may have been particularly dangerous due to residual snow or ice, which may have increased the duty of care Oneill owed to other drivers. Therefore, viewing the evidence in the light most favorable to Plaintiffs, the evidence presented is sufficient to support a finding that Oneill was guilty of gross negligence, i.e., acting recklessly, and also that he acted with conscious and intentional disregard of or indifference to the rights and safety of others and that he knew or should have known of the reasonable likelihood that his actions would cause injury, damage or other harm, i.e., willfully and wantonly. Based on the present record, Defendants' motion for summary judgment as to

9

Plaintiffs' claims of gross negligence and for punitive damages will be denied.[3]

II. <u>Proximate Cause</u>

Defendants argue that Plaintiffs' decedent's operation of her vehicle on the shoulder of the highway was the sole proximate cause of the accident.

The record, however, contains sufficient evidence to create a genuine question of fact as to whether Oneill's acts and omissions were a proximate cause of the accident. Accordingly, summary judgment in Defendants' favor is inappropriate on this issue. See <u>Turner v. Duke Univ.</u>, 325 N.C. 152, 162, 381 S.E.2d 706, 712 (1989) ("Proximate cause is ordinarily a jury question.")

III. <u>Negligent Hiring, Retention, Supervision, and Training</u>

Plaintiffs have forecast no evidence which would support a claim of negligent hiring by the corporate Defendants. However, Plaintiffs' claims for negligent retention, supervision, and training stand on stronger ground. Plaintiffs' forecast of the

---

[3]It is a close question as to whether Plaintiffs' forecast of the evidence is sufficient for a reasonable juror to find Defendant Oneill guilty of willful or wanton conduct by clear and convincing evidence. Upon development of a more complete record at trial this issue may need to be re-examined by the trial judge.

evidence shows that Defendant Oneill was cited for speeding on two occasions in the months leading up to the January 26, 2003, accident, once on November 3, 2002, and again on January 5, 2003. In addition, on the November 3, 2002, occasion he was also cited for failure to maintain a current logbook.  Plaintiffs' evidence also shows that the corporate Defendants had knowledge of these incidents and that Oneill was not subjected to any discipline or additional training as a result.  These facts may be enough to support a claim of negligent retention, supervision, and training against the corporate Defendants and the corporate Defendants' motion for summary judgment will be denied on these claims.  It is unclear whether the Plaintiffs contend that any negligence by the corporate Defendants in this regard would constitute condoning Oneill's actions should they be found to rise to the level of willful or wanton conduct, as required for punitive damages against a corporation under N.C. Gen. Stat. § 1D-15(c). This issue can be addressed more fully at trial.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

June 5, 2006

United States District Judge